Peck, J.
The jury, by their special verdict, found the sale by Hayes to Harvey of the property levied in execution, to be fraudulent and void as against the plaintiffs in error, and that, unless precluded by the finding and judgment of the justice in favor of Harvey, from inquiring into his right thereto, a judgment should be entered in favor of the plaintiffs in error; but that if they were so precluded, judgment should be entered in favor of Harvey for $103.10, as his damages. The only question, therefore, arising upon the record is, whether *531 such finding and judgment in favor of the claimant, are conclusive, as between him and the plaintiffs in error, of his right to the property. If conclusive, the judgment of the superior court must be affirmed, but if not conclusive, the judgment should be reversed, and one entered upon the verdict in favor of the plaintiffs in error.
The proceedings to try the right of property in this case were, very properly, had under sections 101, 102 and 103 of the act regulating the jurisdiction, etc., of justices of the peace and constables (1 Swan & Critchfield’s Stat. 787), the provisions of the code, for a trial of the right to property seized on execution, for various reasons, being inapplicable to such seizures by a constable. Section 202 of the act above cited, specifies in what cases the provisions of the code may be applied to proceedings under that act, and it is only where the provisions of the code are in their nature applicable to the proceedings before the justice, and in respect to which no special provision is made by the statute, that the provisions of the ■code can be so applied. Now, the act referred to not only makes special and minute provisions for the trial of the right of property when levied on by a constable, but those provisions are, to a certain extent, inconsistent with the provisions of the code in such cases; and for both reasons, therefore, the provisions of the code are inapplicable.
That portion of the statute above cited, which relates to the trial of the right to property seized in execution, is a literal transcript of the act of March 14,1831 (Swan’s Stat. of 1841, p. 523), and the acts of Eeb. 11, 1814, Eeb. 16, 1820, and Eeb. 25, 1824 (2 Chase’s Stat. 850, 1124, and 1443), as also that of Eeb. 18, 1809 (1 Chase’s Stat. 611) contain, substantially, the same provisions in regard to the course to be pursued, and its effect upon the parties to the proceeding.
It has always hitherto been regarded as a summary proceeding, to regain the possession of property levied on by mistake, and not as a means to acquire or confirm a title thereto. It was designed, principally, as a protection to the constable who may have made a mistake in the discharge of his duties, enabling him to abandon his levy under certain *532 circumstances, and has never been regarded as conclusive of the rights of any of the parties thereto, except so far as' the statute expressly provides. For instance, the act provides that if the justice finds adversely to the claimant, the-constable shall not be liable to the claimant for the property so taken, but the claimant is not thereby precluded from asserting his right to the property or its proceeds, from the plaintiff, who is also a party to the proceeding, nor from a purchaser at the sale by the constable. In short, he may recover the property, or its value, from any One who subsequently acquires or converts it. His title is not affected by the judgment of the justice; it still subsists, and may be enforced. Patty v. Mansfield, 8 Ohio, 371.
So, too, the statute requires that if the decision is in favor of the claimant, the justice shall order the property restored to him; and if this is done, it has never been supposed that such a restoration gave additional strength or validity to the title of the claimant, or made that good which was previously defective, nor that such finding and restoration were conclu-sive against the plaintiff in execution, any more than a contrary finding would be conclusive upon the claimant. They are both parties to the proceeding, and should be alike affected by its result either way.
That the finding and judgment of the justice, in these summary proceedings, were not intended to be final and conclusive of the rights of the parties, would seem to follow from, the concluding provision, that in one event — a finding against the claimant — “ the constable shall not (thereafter) be liable to the claimant for the property so taken.” It is clearly implied in this provision that the result shall not be conclusive-in any other event, nor as between other parties; and leaves the question as to the real right .to the property still open and liable to be contested, as to all other parties,in a suit where the ultimate right may be determined in a less summary and more satisfactory manner. It also evinces that the main object of the enactment is the protection of the constable, and not an ascertainment of the real rights of the parties to the-property.
*533 Again, this summary inquisition before a justice of the peace, is not appealable, under the law, to a court where a constitutional jury could be impanneled to try it; and if held conclusive as to the rights of property in parties who did not originate the inquisition, it would be liable to grave constitutional objections. It is clear, we think, that it never was intended to be final and conclusive except in the single case of the constable where the finding is adverse to the claimant; •and the claimant can not complain of this partial infringement of his constitutional rights, as he voluntarily resorted to this special remedy, instead of availing himself of the other remedies which were open to him.
It appears from the special verdict, that the justice, being •satisfied that the property seized belonged to the claimant, ■issued his order to the constable, directing him to restore the property to the claimant, which order was disregarded by the constable, and the property sold by him to satisfy the execution; and this leads us to determine the object and effect of this order upon the constable. As we have already seen, it did not have the effect of conferring a title or right where none existed before, and its only object was to restore the property to the status in which it was before the levy, and if complied with, the claimant would still hold it, subject to all the legal and equitable claims of others thereto; and the constable might, therefore, relevy his execution upon the same property, immediately after its redelivery. And such would be his duty if satisfied it was really the property of the debtor in execution. To hold, therefore, that the constable must, under such circumstances, and in obedience to the order, first redeliver the property to the claimant, would require of him a useless ceremony, in no sense beneficial to the claimant. The constable, upon the reception of such order, may, doubtless, obey it, and return nulla bona to the execution; but it is said, in Curtis v. Patterson, 8 Cow. 67, that he may not do this, even then, if the plaintiff in execution tender him a sufficient indemnity. We think the true rule upon this subject is laid down in the recent treatise of Judge Swan, which is as follows: “The constable, however, may, if the judgment creditor will *534 indemnify him, disregard the order of the justice, in relation, to the right of the claimant, and proceed to sell the property And if he sell, notwithstanding the order of the justice to de liver the goods to the claimant, he will be liable to the suit of the latter, in which suit the constable will not be prevented, by the adjudication of the justice, from contesting the title of the claimant .” Swan’s Treatise on the Powers and Duties of Justices of the Peace and Constables, 266. This is not cited as authority; but is referred to as the opinion, deliberately expressed, of an eminent jurist, familiarly acquainted with our statutes, and the construction which has been placed upon them for many years past, and, as such, is certainly entitled to great consideration and respect.
We are, therefore, of opinion, that the judgment at general and at special term of the superior court should be reversed, and a judgment entered upon the verdict in favor of the defendants.
Scott, C.J., and Sutlife, Ghqlson and Brinkerhoff, JJ., concurred.